# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN ANN MARINI, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | : | NO. 10-1730 |
| Defendant. | : | |

## MEMORANDUM ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                                              **December 28, 2010**

Plaintiff Karen Ann Marini ("Marini") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. (ECF No. 1.) Pending before the Court are Marini's Complaint (ECF No. 1) and her Motion for Summary Judgment (ECF No. 7) and the Commissioner's response thereto (ECF No. 8). After careful and independent consideration of the matter, and for the following reasons, the Court will **deny** Marini's request for review.

## I.    Factual and Procedural Background

Marini filed for DIB on June 23, 2006. (A.R. 86-91.) She claimed a disability onset date of September 1, 2002, at which time she was thirty-one years old. (A.R. 86.) She is now thirty-nine years old. Marini has relevant work experience as a bill collector, a customer service representative, and a data entry worker. (A.R. 40-41.) She earned her G.E.D. in 1994. (A.R.

255.) Marini claims disability due to chronic lower back pain and major depressive disorder. (A.R. 13, 272.)

On October 18, 2006, the Social Security Administration ("SSA") denied Marini's application for benefits.[1]  (A.R. 47-51.)  Marini then timely requested a hearing before an ALJ, which was held on April 9, 2008 in Elkins Park, Pennsylvania.  (A.R. 17, 54.)  At the hearing, Marini claimed she suffered from constant back pain radiating to her legs, predominantly her left leg.  (A.R. 26-27, 31-32.)  She testified she has undergone two surgeries and more than thirty injections, all of which only temporarily relieved her pain.  (A.R. 27.)  She stated the pain "is absolutely getting worse" (A.R. 28), and that she is "depressed all the time due to the fact that I feel like I'm 88 and not 36" (A.R. 32-33).  She takes anti-depressants, which make her "really sleepy all day" and she "can't complete one task and [her] concentration isn't fully there."  (A.R. 33.)  She claimed to "take three to four naps a day because [she has] to lay down because sitting . . . and standing . . . is just too irritating."  (A.R. 33.)

With regard to family life, Marini testified that her daughter is in daycare five days a week "[b]ecause of the fact that I was falling asleep throughout the day with her at home."  (A.R. 33.)  A neighbor also takes her son to the bus stop in the morning and returns him home.  (A.R. 34.)  She also stated that her husband does the shopping, she occasionally cooks light dinners such as spaghetti or grilled cheese, and her husband and nephew help her with laundry.  (A.R. 24-25.)  In September 2006, she explained her daily routine to a consultative examiner as

---

[1] Pursuant to the SSA's procedures to test modifications to the disability determination process, Marini's case was randomly chosen to proceed first at the state-level, with the opportunity to request a hearing before an ALJ without the interposed step of SSA reconsideration.  See 20 C.F.R. § 404.906(a)(4).

follows:

> I get my son off to the bus stop in the morning. Come home – do the dishes. At that time, I might have to sit down and relax. I'll read a book (to her daughter) and watch TV with her. Then, fold some clothes. I pick up my son at 12:00. Then, I'll go to the store.

(A.R. 256.)

The vocational expert ("VE") then testified and identified Marini's past relevant work as bill collection, customer service, and data entry. (A.R. 40-41.) Collection work is skilled, light work; customer service is skilled, sedentary work; and data entry is semi-skilled, sedentary work. (A.R. 40-41.) The ALJ then posed a hypothetical limited to "sedentary work that is confined to routine one to two step tasks, providing no more than limited interaction with the public and coworkers, and minimal supervision. The work should involve few work changes and afford the opportunity to alternate between sitting and standing in 20 to 30 minute intervals." (A.R. 41.)

The VE testified Marini would not be able to perform her past relevant work, but that there are several positions she could perform in the national or regional economy, including bench assembler; report order clerk or clerical sorter; and inspector, examiner, or checker. (A.R. 42.) Notably, the VE then testified that, assuming Marini would have to rest for periods of time throughout the day, there would be no available jobs. (A.R. 43.)

On April 22, 2008, the ALJ issued an opinion denying Marini's claim for benefits. (A.R. 7-16.) The ALJ found that Marini has not engaged in substantial gainful activity since the alleged onset date of September 1, 2002. (A.R. 12.) She also found that Marini suffers from several severe impairments, including degenerative disc disease involving the lumbar and cervical spine and major depressive disorder, but that these impairments do not meet or

medically equal the listed impairments. (A.R. 12.) Nevertheless, the ALJ determined that Marini does have some work limitations. (A.R. 13.) The ALJ concluded Marini's impairments

> restrict[] her to sedentary work[2] subject to the following limitations: [she] is restricted to work which allows the opportunity to alternate periods of sitting and standing in 20-30 minute intervals; and [she] is further restricted to routine one to two step job tasks in occupations involving no more than minimal supervision, relatively few changes in the work routine, and no more than limited contact with coworkers and the general public.

(A.R. 13.) Although the ALJ conceded Marini could not perform her past relevant work with these limitations (A.R. 15), the ALJ concluded that "considering [Marini's] age, education, work experience, and residual functional capacity, [Marini] has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (A.R. 16). "A finding of 'not disabled' [was] therefore appropriate." (A.R. 16.)

In her decision, the ALJ noted that she "considered all symptoms described by [Marini] in her testimony and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." (A.R. 13.) In addition, the ALJ considered opinion evidence, including a report from Marini's treating physician, Dr. Louis Pearlstein. (A.R. 15; see also A.R. 323-26.) The ALJ found Marini's testimony "not fully consistent with her activities of daily living which suggest a broader range of functioning." (A.R. 14.) Further, the ALJ found Dr. Pearlstein's opinion was "not consistent with the medical evidence of record and with [Marini's] activities of daily living which do not support such

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

extreme functional limitations." (A.R. 15.)

On June 26, 2008, Marini appealed the ALJ's decision to the Appeals Council. (A.R. 6.) The Appeals Council denied Marini's request for review, rendering the ALJ's decision the Commissioner's final determination. (A.R. 1-3.) Marini then filed a complaint in this Court seeking review of the Commissioner's final determination. (ECF No. 1.)

II.     **Jurisdiction and Standard of Review**

    A.     **Jurisdiction**

This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). See 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner . . . made after a hearing to which [s]he was a party . . . may obtain review of such decision by a civil action commenced within sixty days after the mailing to h[er] of notice of such decision . . . ."); (see also A.R. 1). Venue is proper in this Court pursuant to § 405(g).

    B.     **Standard of Review**

District courts may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the matter for rehearing. 42 U.S.C. § 405(g). This Court's role in reviewing the ALJ's decision is to determine whether there is substantial evidence to support the Commissioner's decision. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); see 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005); see also Jones, 364 F.3d at 503 (stating that substantial evidence is less than a preponderance of the

evidence but more than a scintilla). To determine whether substantial evidence exists, the Court reviews the record as a whole. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Nevertheless, the Court retains plenary review of all legal issues. Id. (citing Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995) (per curiam)).

### III. Discussion

#### A. Legal Standards

Social security benefits may be paid to persons "under a disability." 42 U.S.C. § 423(a)(1). To establish a disability, a claimant "must demonstrate some medically determinable basis for an impairment that prevents h[er] from engaging in any substantial gainful activity for a statutory twelve-month period." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (quotation marks omitted). "A person is disabled 'only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 469 (3d Cir. 2007) (quoting 42 U.S.C. § 423(d)(2)(A)).

When assessing whether an individual has a disability under the Act, the ALJ follows the following five-step sequential analysis: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. § 404, subpart P, appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet the previous prong, the Commissioner considers the claimant's

residual functional capacity to determine whether she can perform any past relevant work – if she can, the claimant will be found not disabled; and (5) if the claimant cannot perform any of his or her past relevant work, the Commissioner will consider the claimant's residual functional capacity, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. Schaudeck, 181 F.3d at 431-32; 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The claimant bears the burden of proof for steps one, two, and four and the burden shifts to the Commissioner for the fifth step – no party bears the burden for step three. Rivera v. Comm'r of Soc. Sec., 164 F. App'x 260, 262 (3d Cir. 2006). Furthermore, if at any step the Commissioner finds the claimant is disabled or not disabled, the inquiry is at an end. Kinney, 244 F. App'x at 469 (citing 20 C.F.R. § 404.1520(a)(4)). The ALJ denied Marini's claim at the fifth step, concluding that Marini "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (A.R. 16.)

> In evaluating a claim for benefits, the ALJ must consider all of the evidence in the case. The ALJ must "explicitly" weigh all relevant, probative, and available evidence. Moreover, the ALJ must provide some explanation for a rejection of probative evidence that would suggest a contrary disposition. Although the ALJ may properly accept some parts of the medical evidence and reject other parts, the ALJ must still consider all the evidence and give some reason for discounting the evidence [s]he rejects. In the absence of such an indication, the reviewing court cannot determine whether significant probative evidence was deemed not credible or whether it was simply ignored.

Weber v. Massanari, 156 F. Supp. 2d 475, 483 (E.D. Pa. 2001) (citations omitted). Further, when there is a conflict in the evidence, the ALJ is entitled to decide which evidence to credit, but "cannot reject evidence for no reason or the wrong reason." See Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993). "[T]he ALJ must indicate in h[er] decision which evidence [s]he has

rejected and which [s]he is relying on as the basis for h[er] finding. This explanation provides [the Court] with a basis on which to assess whether significant probative evidence was not credited or was simply ignored." Schaudeck, 181 F.3d at 433 (citations, quotation marks, and alteration omitted).

B. Parties' Contentions

Marini argues that the ALJ's finding of "not disabled" lacks support from substantial evidence for three reasons. First, she asserts the ALJ assigned improper weight to her subjective complaints of pain and her treating physician's opinion by failing to account for multiple medical procedures and by placing too much weight on her "minimal" daily activities. Marini also contends the ALJ failed to consider non-exertional limitations resulting from Marini's depressive disorder and the side effects of her medication by failing to address her subjective complaints of, inter alia, lethargy and fatigue. Consequently, Marini argues the ALJ constructed a deficient hypothetical by failing to include limitations based on her depressive disorder and the side effects of her medication. (ECF No. 7.)

The Commissioner responds that there is substantial, objective evidence in the record to support the ALJ's decision. In particular, the Commissioner argues that the ALJ considered Marini's subjective complaints, including the side effects of her medication, and found them not fully credible in light of the record medical evidence and Marini's own statements of her daily activities. Further, the treating physician's report was similarly inconsistent with the record and, therefore, could be rejected. Because these items were properly rejected, the hypothetical was not deficient – it included all limitations reflected in the record, including non-exertional limitations for depressive disorder. (ECF No. 8.)

C.   **Analysis**

The Court will first address the treating physician's report and then the subjective complaints, which must be resolved before assessing the sufficiency of the VE hypothetical.

1.   **Dr. Pearlstein's Opinion**

The opinions of treating physicians should be given great weight, but an ALJ may reject a treating physician's opinion outright on the basis of contradictory medical evidence. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). A treating physician's opinion is accorded controlling weight only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009); 20 C.F.R. § 404.1527(d)(2).

After reviewing Marini's history of medical treatments and reports on her functional limitations, the ALJ found Dr. Pearlstein's report inconsistent with the medical evidence of record and concluded that Marini's daily activities do not support the extreme limitations Dr. Pearlstein opined. (A.R. 15.) Marini contends that the ALJ placed too much weight on her daily activities and failed to consider all the medical evidence in the record.

The Court concludes that substantial evidence supports the ALJ's finding that Dr. Pearlstein's report is not consistent with the remainder of the record evidence. Dr. Pearlstein opines that Marini cannot sit, stand, or walk for more than one hour of an eight-hour workday. (A.R. 323.) Dr. Pearlstein also suggests that Marini cannot bend, squat, kneel, crawl, or climb stairs or a ladder at all. (A.R. 324.) Ultimately, Dr. Pearlstein concludes that Marini "cannot perform any gainful employment on a continuous and sustained basis." (A.R. 326.) In support of these findings, Dr. Pearlstein relies exclusively on Marini's diagnosis of radiculopathies and

"bad surgery." (A.R. 326.)

Since July 2002, Marini has had two back surgeries, more than thirty injections to address her back issues, and numerous MRIs. (See A.R. 142, 148, 158, 172-76, 215, 251, 299-307.) She also underwent a facet joint block in June 2003. (A.R. 139.) Almost all of the medical evidence reveals "mild" neurological findings (e.g. A.R. 160-62, 163, 164, 188, 307, 320), and in April 2005, at least one examining physician indicated that "some of Marini's complaints and findings do not fit the neuro-anatomy of her lesions" (A.R. 162). Moreover, Dr. Pearlstein's earlier EMG and Nerve Conduction Studies found bilateral radiculopathies, and only mild neuropathy in the left knee. (A.R. 313-19.) Finally, the record is devoid of any treatment, studies, or findings for all of 2007, and includes only Dr. Pearlstein's report and one MRI for 2008. (A.R. 320-26.)

Marini also saw Dr. Luigi DeSantis for a consultative examination related to her application for benefits. (A.R. 262-69.) Dr. DeSantis opined that Marini "had a little difficulty sitting or standing or walking" with "decreased range of motion of her neck and lower back." (A.R. 265.) Dr. DeSantis ultimately concluded that Marini had no sitting limitation, but could stand or walk a total of one to two hours in an eight-hour workday and could never bend, kneel, stoop, crouch, balance, or climb. (A.R. 266-67.)

As noted above, Marini argues the ALJ failed to consider all of the relevant medical evidence. In particular, Marini points to three pieces of medical evidence she alleges the ALJ failed to consider: a March 2008 MRI and Dr. Pearlstein's April 2005 and November 2006 studies. Although the ALJ must explicitly weigh all probative evidence, she need only provide an explanation for rejecting probative evidence that would suggest a contrary disposition. Weber, 156 F. Supp. 2d at 483. The ALJ indicated she considered all record evidence. (A.R.

14.) Further, for the reasons below, the evidence Marini highlights does not suggest a contrary disposition and, therefore, the ALJ did not need to explain her treatment of these materials.

The 2008 MRI reveals minimal disc bulging and severe neural foraminal narrowing (A.R. 320), which support the ALJ's conclusion regarding the existence of impairments. This study, however, does not address the severity and functional limitations of the impairments. Similarly, the April 2005 and November 2006 studies support the ALJ's finding of impairments, but do not suggest a contrary disposition regarding their severity or functional limitations. As noted above, Dr. Pearlstein's studies indicate bilateral radiculopathies and, at most, mild neuropathy in Marini's knee. Neither study suggests these conditions limit her ability to function to the extent Dr. Pearlstein suggests in his March 2008 report. (See A.R. 323-26.)

After a review of the entire case record, this Court concludes that substantial evidence exists to support the ALJ's treatment of Dr. Pearlstein's report. The record evidence simply does not describe such exreme limitations as Dr. Pearlstein suggests. Therefore, the Court need not consider the ALJ's reliance on Marini's daily activities. Because Dr. Pearlstein's report is not consistent with the medical evidence of record, the ALJ was not required to assign it controlling weight. See Smith, 359 F. App'x at 316.

### 2. Subjective Complaints

ALJs are required to consider subjective complaints of pain or other symptoms, but these statements alone cannot establish a disability. 20 C.F.R. § 404.1529(a); see id. § 404.1528(a) ("Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment."). Indeed, an ALJ must give great weight to subjective complaints if they are supported by competent medical

-11-

evidence. Schaudeck, 181 F.3d at 433.

> Although the ALJ can reject such claims if [s]he does not find them credible . . . the adjudicator is not free to accept or reject that individual's complaints solely on the basis of . . . personal observations. Rather, in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical evidence and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.

Id.

The Third Circuit has consistently stated that "[i]n order for an ALJ to reject a claim of disabling pain, [s]he must consider the subjective pain and specify h[er] reasons for rejecting these claims and support h[er] conclusion with medical evidence in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990); see also 20 C.F.R. § 404.1529(a) ("[W]e consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). If the claims are not supported by objective medical evidence, then the ALJ must consider other sources of evidence, including the claimant's own statements. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The regulations also list factors relevant to the analysis, including the claimant's daily activities and the side effects of medication. See 20 C.F.R. § 404.1529(c)(3).

When the ALJ considers subjective statements, the ALJ must make a credibility finding, and the "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and

the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.

Marini contends that the ALJ failed to consider her subjective complaints of pain as well as other symptoms and side effects, including lethargy and fatigue. After recounting Marini's treatment history, the ALJ concluded that Marini's "testimony [regarding her functional limitations] is not fully consistent with her activities of daily living which suggest a broader range of functioning." (A.R. 14.) Furthermore, the ALJ noted Marini testified that she worked as an office clerk until 2003, despite an alleged onset date of September 2002, and that "she left this work, not for any impairment related reason, but because she was seven months pregnant at the time the job ended." (A.R. 15.) Marini complains that the ALJ afforded too much weight to her "minimal" daily activities and failed to acknowledge the multiple procedures she underwent.

It is clear from the ALJ's opinion that she considered Marini's numerous procedures – the ALJ noted Marini's two back surgeries, numerous MRIs, and additional procedures and studies. (A.R. 13.) Further, the ALJ considered Marini's testimony regarding her daily activities, as well as her statements during a consultative psychological examination. (A.R. 13, 15, 256.) After a review of the record, the Court concludes that substantial evidence exists to support the ALJ's conclusion that Marini's self-reported symptoms are not fully consistent with the evidence in the record, including her daily living activities.

First, many of her alleged symptoms related to side effects, such as lethargy and fatigue, find no support in the record other than her own statements and Dr. Pearlstein's report, which was addressed above. (A.R. 33, 226-27, 326.) Notably, there is no indication of these symptoms in either consultative examination. (See A.R. 254-59, 262-69.) Further, none of her doctors' reports indicate any such side effects.

Second, there is substantial evidence in the record to support the ALJ's finding that her complaints are not fully consistent with her reported daily activities. In September 2006, Marini told the consultative mental health examiner,

> I get my son off to the bus stop in the morning. Come home – do the dishes. At that time, I might have to sit down and relax. I'll read a book (to her daughter) and watch TV with her. Then, fold some clothes. I pick up my son at 12:00. Then, I'll go to the store.

(A.R. 256.) She testified that she can do laundry, but needs her husband or nephew to help her move it from the washer to the dryer and to carry it upstairs. (A.R. 24.) Also, she can cook light dinners, such as grilled cheese or spaghetti. (A.R. 25.) Although she testified she cannot take her son to the local bus stop (A.R. 34), she also testified that she can drive for up to half-an-hour, drives her daughter to and from daycare five days a week, and drives herself to doctor appointments (A.R. 21, 34). These activities are not consistent with Marini's complaints of pain so severe that she cannot "work on a regular and continued basis." (A.R. 37-38.) Her activities justify the ALJ's conclusion that she can perform sedentary work with certain limitations.

In her brief, Marini cites <u>Frankenfield v. Bowen</u>, 861 F.2d 405 (3d Cir. 1988), for the proposition that daily activities cannot be used to show ability to engage in substantial gainful activity. But <u>Frankenfield</u> considers whether self-reported daily activities can overcome opinions of treating physicians. <u>Id.</u> at 408. Having concluded that the ALJ did not err in her finding regarding Dr. Pearlstein's report, and that the remainder of the medical evidence lends substantial support for the ALJ's findings, <u>Frankenfield</u> does not render the ALJ's analysis erroneous.

Finally, as discussed in the previous section, only Dr. Pearlstein suggested functional limitations consistent with Marini's complaints. Because the ALJ did not err in concluding that

-14-

Dr. Pearlstein's report was inconsistent with the other medical evidence in the record, and for the foregoing reasons, the Court finds substantial evidence supports the ALJ's treatment of Marini's subjective complaints.

### 3. VE Hypothetical

"A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments." Rutherford, 399 F.3d at 554. But the Third Circuit does not require an ALJ to submit to the VE every impairment alleged by a claimant. Instead, the "hypothetical[] posed must 'accurately portray' the claimant's impairments." Id. An accurate portrayal requires the ALJ to submit to the VE all medically established impairments, which means "all of a claimant's credibly established limitations." Id.

Of particular import in this case are the Third Circuit's guidelines for finding "credibly established limitations." See id. For example, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible." Id. Also, the ALJ can reject "limitations that are asserted by the claimant but that lack objective medical support" if there is conflicting evidence in the record. Id.

Marini argues that the ALJ's hypothetical was deficient because it omitted non-exertional limitations related to major depressive disorder and the side effects of her medication. Marini claims the hypothetical lacked limitations for lack of energy, lack of concentration, memory problems, and failure to complete tasks. Marini's argument is meritless.

Marini only argues one limitation in particular – a limitation for laying down and resting – which she contends stems from the side effects of her medication. In fact, at the hearing before the ALJ, this is the only limitation Marini's attorney added to the VE hypothetical. (A.R. 43.)

Thus, she does not contend that the ALJ did not consider her depression at all, but rather only certain subjective symptoms of her depression. As determined in the previous section, the ALJ did not err in rejecting Marini's subjective complaints. Therefore, the hypothetical is not deficient for failing to consider related limitations.

Although Marini also mentions lack of concentration, lack of memory, and failure to complete tasks, it is clear the ALJ's hypothetical included relevant limitations. The ALJ recognized that Marini suffered from an impairment because of her depression. (A.R. 12.) The ALJ also found Marini's "impairments restricted her to sedentary work, subject to the following limitations: . . . routine one or two step job tasks in occupations involving no more than minimal supervision, relatively few changes in the work routine, and no more than limited contact with coworkers and the general public." (A.R. 13.) The ALJ included each of these limitations in the hypothetical posed to the VE. (A.R. 41.) These limitations account for Marini's major depressive disorder. Accordingly, the ALJ included all credibly established limitations.

**IV.     Conclusion**

For the foregoing reasons, Marini's request for review will be **denied**. An appropriate order will follow.

O:\Todd\10-1730 Marini v. Astrue\Memorandum on MSJ - draft 5.wpd